UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOTHER, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>L. L. BEAN, Inc.,<br><br>　　　　　Defendant. | NO. C06–5540JKA<br><br>**L. L. BEAN'S MOTION FOR SANCTIONS AND TO COMPEL**<br><br>**NOTE ON MOTION CALENDAR: APRIL 6, 2007** |

Pursuant to Fed. R. Civ. P. 37 and CR 37, the defendant, L. L. Bean, Inc. ("L. L. Bean"), moves for discovery sanctions against the plaintiff, Mother, LLC ("Mother"), based on Mother's violation of the Federal Rules of Civil Procedure and this Court's September 25, 2006, Minute Order Regarding Discovery and Depositions (the "Minute Order"), and to compel additional deposition testimony from Martin Grabijas ("Grabijas"), Mother's President.

L. L. Bean is quite reluctant to file this discovery motion because it believes the parties and the Court can better spend their time and energy on substantive matters.

L. L. Bean's Motion for Discovery Sanctions – 1 of 14

　　　　　　　　　　　　　　　　　　　　　　BRANN & ISAACSON
　　　　　　　　　　　　　　　　　　　　　　P.O. Box 3070, 184 Main Street
　　　　　　　　　　　　　　　　　　　　　　Lewiston, Maine 04243
　　　　　　　　　　　　　　　　　　　　　　(207) 786–3566

Nevertheless, L. L. Bean files this discovery motion because, without judicial intervention, its ability to defend itself in this action will be prejudiced.

Specifically, after Mother promised L. L. Bean that it had produced all of its business records, Grabijas revealed during his deposition that none of the sales and financial information relied upon to calculate Mother's alleged damages had been produced. Furthermore, Mother's counsel objected 120 times during Grabijas' deposition, often on "relevance" grounds, and instructed him not to answer questions twice without complying with Fed. R. Civ. P. 30(d) and the Minute Order. Finally, Grabijas walked out of his deposition prior to the expiration of the seven–hour time limit of Rule 30(d)(2).

As required by Fed. R. Civ. P. 37 and CR 37, L. L. Bean broached these matters with Mother's counsel in a telephone conference held on March 12, 2007, but was unsuccessful in resolving them. *See* Peter J. Brann Declaration ("Brann Decl.") ¶¶ 46–50; *id*. Exhibit ("Ex.") V.

## BACKGROUND

In brief, this case is about two competing hunting vests, the Mother Day Pack (the "Mother vest") and the L. L. Bean Upland Vest Pack (the "L. L. Bean vest"), which are designed for use by upland bird hunters. Mother alleges that the L. L. Bean vest infringes Mother's trade dress, although, interestingly, neither Grabijas nor the designer of the Mother vest, Jesse Thompson, actually examined the L. L. Bean vest until months *after* Mother filed this lawsuit.

Since L. L. Bean and its lead counsel are located in Maine, L. L. Bean's plan was to conduct narrowly tailored discovery in stages so that it would only be necessary to travel once to Washington. *First*, on December 28, 2006, L. L. Bean served on Mother a set of interrogatories and document requests designed to elicit information regarding Mother's substantive claims and remedies. *See* Brann Decl. ¶ 3; *id*. Exs. A–B. *Second*, it noticed the

L. L. Bean's Motion for Discovery Sanctions – 2 of 14

depositions of Grabijas and Thompson for February 13 and 14, 2007, respectively, after the written discovery responses were due. *Id*. ¶ 5; *id*. Exs. C–D.

Mother never sought an enlargement of time to respond to the written discovery, and indeed, did not respond at all to several calls from L. L. Bean's counsel prior to the due date of the discovery. *Id*. ¶¶ 6–7. Mother did not object to any of the discovery, but did not provide any discovery responses by the due date of January 30, 2007. *Id*. ¶¶ 8–11. Instead, Mother sent unsigned interrogatory answers on February 5, 2007 (which were later signed), and sent a batch of documents that L. L. Bean received on February 7, 2007 (and a written document response later). *Id*. ¶¶ 12–20. In response to inquiries about the absence of documents on many key issues, such as financial information about Mother and its claimed damages, Mother's counsel wrote, "We have provided you with Mother's entire set of business files. You now have everything Mother has." *Id*. ¶ 20; *id.* Ex. P. L. L. Bean took Mother at its word, and took the depositions of Grabijas and Thompson as scheduled a week later in Tacoma at the offices of L. L. Bean's local counsel, Brad Maxa. *Id*. ¶¶ 21–24.

In defending the Grabijas deposition, Mother's counsel objected to approximately 120 questions posed by L. L. Bean's counsel, generally on relevance and other inappropriate grounds, *e.g.*, one question was "boring." *Id*. ¶ 25; *id.* Ex. R (Martin Grabijas Deposition ("Grabijas Dep.")) at 43. This tactic was disruptive and violated the Court's Minute Order. *Cf.* Minute Order ¶ 2(b) (specifying permissible objections).

Furthermore, Mother's counsel twice instructed Grabijas not to answer direct questions without justification and without Court approval under Fed. R. Civ. P. 30(d). *First*, she instructed Grabijas not to answer a question regarding what an L. L. Bean competitor, Orvis, told Mother when it stopped selling the Mother vest in its catalogs for the year 2006. *See* Grabijas Dep. 135–37. Since Mother has alleged that L. L. Bean stopped selling the Mother vest in 2006 for illegitimate reasons, *see* Complaint ¶¶ 12–15, the reasons other retailers also stopped selling the Mother vest in 2006 are certainly discoverable.

L. L. Bean's Motion for Discovery Sanctions – 3 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

*Second*, Mother's counsel also instructed Grabijas not to answer direct questions about communications between Grabijas and a lawyer, Darren Jones ("Jones") of the Seattle law firm, Black Lowe & Graham, who does not, and did not, represent Mother in this matter, and whose emails Mother voluntarily produced to L. L. Bean in response to its discovery requests. *See* Grabijas Dep. at 181–83. Particularly since the emails suggest that Jones did not think that Mother had a particularly good case and since no one from Mother even inspected the L. L. Bean vest prior to filing suit, the communications with the lawyer should be discoverable. *See* Brann Decl. Exs. S–T (Grabijas–Jones emails); Grabijas Dep. 145 ("I never had a physical sample of the L. L. Bean pack in my possession until a few weeks ago.").

Furthermore, Mother failed to produce relevant information in its possession even though it had represented that it had produced "everything" in its possession responsive to L. L. Bean's document requests. Toward the end of the deposition, L. L. Bean's counsel sought confirmation of the accuracy of Mother's written responses to L. L. Bean's document requests — specifically, confirmation that Mother did not have certain documents. In its written response to L. L. Bean's document requests, Mother wrote that it had *no* documents of its own to produce that relate to the damages it claims in this lawsuit and *no* financial statements, whether audited or unaudited, to produce because Mother does not prepare financial statements. Brann Decl. Ex. Q ¶¶ 14, 22, 23. When Grabijas was asked to confirm that Mother had no documents in its possession relating to Mother's damages claims, he testified, "Those documents exist in my computer, and those documents can be obtained for you." Grabijas Dep. 240–41. Similarly, Grabijas testified that he could have produced a summary of sales figures, or the sales figures themselves (although none was produced). *Id* at 241–42. Grabijas' response was the same for L. L. Bean's request for financial statements: "[T]he numbers are in the computer, in QuickBooks, and we can run reports as detailed or as summarized as you like." *Id*. at 243 (brackets added).

L. L. Bean's Motion for Discovery Sanctions – 4 of 14

Finally, after six hours and six minutes of Grabijas' testimony, Mother's counsel announced that she and her client were leaving. *See* Grabijas Dep. 257–58. L. L. Bean's objection based on the seven–hour limit in Rule 30(d)(2) was unavailing.

Against this backdrop, we turn to the motion for sanctions and to compel.

**ARGUMENT**

**I. L. L. BEAN IS ENTITLED TO RELIEF FROM MOTHER'S FAILURE TO PRODUCE RESPONSIVE DOCUMENTS.**

Mother's unwarranted refusal to produce relevant electronically stored information, combined with its refusal to allow L. L. Bean to complete its deposition of Grabijas, has put L. L. Bean in an untenable position. L. L. Bean took Grabijas' deposition on the date originally noticed because Mother assured L. L. Bean that Mother had produced "Mother's entire set of business files" in response to L. L. Bean's document requests. Brann Decl. Ex. P. During Grabijas' deposition, L. L. Bean learned that this representation was inaccurate, and that Grabijas had additional information responsive to L. L. Bean's document requests on his computer, including information relating directly to Mother's claimed damages. *Cf.* Fed. R Civ. P. 26(a)(1)(C) (initial disclosure relating to damages). To make matters worse, after failing to produce this information, Mother refused to allow L. L. Bean to question Grabijas for the entire seven–hour time period allotted by Fed. R. Civ. P. 30(d)(2). With reluctance, then, L. L. Bean brings this dispute to the Court, seeking relief from Mother's obstructionism so that L. L. Bean will not have to defend this action uncertain what, if any, actual evidence Mother has of its alleged damages.

The Federal Rules of Civil Procedure, as recently amended, make plain that a party responding to a document request must include in its response any "electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained — *translated, if necessary, by the respondent into reasonably usable form*." Fed.

L. L. Bean's Motion for Discovery Sanctions – 5 of 14

R. Civ. P. 34(a) (emphasis added). "Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." *Peskoff v. Faber,* 2007 WL 530096, *4 (D.D.C. Feb. 21, 2007) (citations omitted).

Yet, despite the express requirement that Mother produce in response to L. L. Bean's document requests electronically stored information translated into a usable form, Mother failed to do so. Indeed, Mother's counsel, in objecting to a direct question by L. L. Bean's counsel to Grabijas whether Mother's representation that it had produced all documents relating to its damages to L. L. Bean was true, went so far as to deny Mother's obligation to undertake the work to produce electronically stored information: "And he's ask — he's answered it three times. He told you that it exists in his computer. You didn't — you — you can't require him to create something that doesn't exist already, and that's what you're asking him to do." Grabijas Dep. 242–43. That response is inaccurate, and violates both the letter and the spirit of the amended Fed. R. Civ. P. 34, which forbids parties from refusing to produce electronically stored information because it is "on the computer."

Pursuant to Fed. R. Civ. P. 37(d), the Court may order a range of sanctions for discovery misconduct suited to the violation. The cleanest and most obvious sanction for Mother's conduct here is to preclude Mother from introducing into evidence, or testifying based upon, the electronically stored information it refused to produce to L. L. Bean. *See* Fed. R. Civ. P. 37(b)(2)(B); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843–44 (9th Cir. 1976) (affirming order excluding unproduced evidence); *Zenith Elecs. Corp. v. WH–TV Broadcasting Corp.*, 395 F. 3d 416, 420 (7th Cir. 2005) (affirming order barring damages evidence for party's failure to respond to written discovery request for description of damages theory and proof to be employed).

This sanction is appropriate for Mother's willful refusal to produce the electronically stored information, given the relevant facts. *See Pulliam v. Shelby County, Tenn.*, 902 F.

L. L. Bean's Motion for Discovery Sanctions – 6 of 14

Supp. 797, 805 (W.D. Tenn. 1995) (ruling that the limited sanction of exclusion was appropriate for a party's refusal to disclose documents to opposing party). *First*, Mother's duty to produce electronically stored information translated into usable form is plain on the face of the rule. *Second*, Mother expressly represented in its response to Document Request No. 22, seeking all documents related to its damages claims, "Currently, Mother has no documentation to produce." Brann Decl. Ex. Q ¶ 22. (Mother made similar representations regarding Mother's sales data and financial statements. *Id*. ¶¶ 14, 23.) *Third*, when L. L. Bean asked for confirmation that no such documents exist, Mother confirmed, "You now have everything Mother has." *Id*. Ex. P. *Fourth*, Grabijas testified at his deposition, "Those documents exist in my computer, and those documents can be obtained for you." Grabijas Dep. 240–41. Mother should be held to the terms of its specific representation to L. L. Bean that its document production was complete. *See Total Control, Inc. v. Danaher Corp.*, 359 F. Supp. 2d 387, 400 (E.D. Pa. 2005) (preclusion proper where evidence sought to be introduced contradicted direct representation of party seeking to introduce such evidence).

In the alternative, at a minimum, L. L. Bean should be entitled to review any relevant electronically stored information in Mother's custody, possession, or control, and to question Grabijas about that electronically stored information *at no additional expense to L. L. Bean*. Pursuant to Fed. R. Civ. P. 30(d)(2), "The [C]ourt must allow additional time consistent with Rule 26(b)(2) if needed for the fair examination of the deponent if the deponent or another person, or other circumstance, impedes or delays the examination" (brackets added). Counsel's recalcitrance and uncooperativeness, and the unilateral curtailment of a deposition by a party deponent, all form adequate bases for the imposition of such sanctions. *See LaPlante v. Estano*, 226 F.R.D. 439, 440 (D. Conn. 2005). The transcript of the Grabijas deposition makes each of those elements readily apparent. Counsel's frequent, repetitive, and unwarranted objections delayed proceedings unnecessarily; as did counsel's refusal to allow Grabijas to testify for the duration of the seven–hour period permitted by Rule 30(d). Rule

L. L. Bean's Motion for Discovery Sanctions – 7 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

30(d) provides for seven hours of question time in one day. *See* Fed. R. Civ. P. 30, Advisory Committee Notes to the 2000 Amendment, Subdivision (d) ("This limitation contemplates that there will be reasonable breaks during the day for lunch and other reasons, and that the only time to be counted is the time occupied by the actual deposition."). Moreover, Mother's refusal to produce electronically stored information relating to Mother's damages effectively prevented L. L. Bean from questioning Grabijas about Mother's claimed damages with any specificity.

"If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." Fed. R. Civ. P. 30(d)(3). Under these circumstances, if the Court will not exclude the unproduced electronically stored information, then the Court should at least require Mother to produce that information, and allow L. L. Bean the balance of its remaining time to depose Grabijas plus such additional time as necessary to question Grabijas about Mother's claimed damages. Further, to ensure that L. L. Bean does not bear the cost of Mother's intransigence, L. L. Bean requests that the Court order that the conclusion of the deposition take place at L. L. Bean's general counsel's offices in Lewiston, Maine.

**II.  L. L. BEAN IS ENTITLED TO RELIEF FROM MOTHER'S IMPROPER PRIVILEGE CLAIMS.**

Mother's counsel's instructions to Grabijas not to answer certain questions were also improper, and in violation of Fed. R. Civ. P. 30(d)(1) and the Minute Order. Rule 30(d)(1) provides, "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." *Id*. If that directive is not clear enough, the Minute Order further provides, "Directions to the deponent not to answer are improper." *Id*. ¶ 2(c). Advice not to answer is

L. L. Bean's Motion for Discovery Sanctions – 8 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

*only* appropriate to assert a genuine privilege or to present a motion challenging the appropriateness of the line of questioning. *Id*.

Mother's counsel instructed Grabijas not to answer questions on two occasions not covered by these limited exceptions. *First*, counsel directed Grabijas not to answer questions about why Orvis stopped selling the Mother Day Pack for a period of time. The asserted basis for the instruction was "that [Grabijas] is — he is going to be disclosing proprietary information that is irrelevant to this lawsuit." Grabijas Dep. 136 (brackets added). Mother's appeal to relevance was misplaced under Fed. R. Civ. P. 26(b)(2). L. L. Bean has been accused of breaking off its relationship with Mother in order to sell a knock–off product. Complaint ¶¶ 12–15. L. L. Bean certainly can inquire whether and under what conditions other vendors of the Mother vest stopped selling that product.

Mother's counsel identified no recognized privilege to support her instruction. Nor did she halt the deposition to seek a protective order from the Court. Accordingly, her instruction to Grabijas was a direct violation of Rule 30 and the Minute Order. Indeed, her instruction would have been improper, even had L. L. Bean's counsel asked wholly inappropriate questions, which we hasten to add, it did not. *See Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007) (holding that, even in the face of "shameful" questioning by opposing counsel, "instructions not to respond that neither shielded a privilege nor supplied time to apply for a protective order … were unprofessional and violated the Federal Civil Rules of Procedure as well as the ethical rules that govern legal practice") (ellipsis added).

Later, Mother's counsel instructed Grabijas not to answer questions regarding the substance of his conversations with an attorney with whom Grabijas had earlier spoken, Darren Jones of Black Lowe & Graham. Grabijas admits he never retained Jones as legal counsel in regard to a potential claim against L. L. Bean. Grabijas Dep. 182–83. Moreover, Mother waived any limited attorney–client privilege that might have existed regarding communications between Grabijas and attorney Jones when it produced correspondence

L. L. Bean's Motion for Discovery Sanctions – 9 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

between Jones and Grabijas regarding the substance of Grabijas' potential trade dress claims against L. L. Bean. *Id.* at 182. In those communications, Grabijas sought an answer from Jones regarding how seeing various photos of the Mother and L. L. Bean vests affected his view of the validity of potential trade dress claims against L. L. Bean. Brann Decl. Exs. S–T. In the later of the two emails, Grabijas asked Jones whether his thoughts on Grabijas' potential claims were the "same story," having seen additional photos of the L. L. Bean vest. *Id.* When L. L. Bean asked Grabijas to explain what the "same story" was, Mother's counsel instructed Grabijas not to answer questions regarding the substance of his conversation with attorney Jones on the ground of attorney–client privilege between Grabijas and Jones. Grabijas Dep. 183.

The attorney–client privilege "may be waived … explicitly, by turning over privileged documents." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). "Voluntary disclosure of a privileged attorney communication constitutes waiver." *Clady v. Los Angeles County*, 770 F.2d 1421, 1432 (9th Cir. 1985). The communications between Grabijas (for Mother) and Jones were turned over knowingly by Mother, and related, by Grabijas' own admission, to Mother's potential trade dress claims against L. L. Bean. Mother did not provide L. L. Bean a privilege log identifying *any* privileged documents withheld from production, let alone documents relating to the Mother–Jones relationship. Further, any such objection has been waived because Mother's discovery responses were untimely. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Only *after* L. L. Bean informed Mother that it intended to file this motion did Mother seek to retrieve the communications between Grabijas and Jones on the ground that they were inadvertently produced. Brann Decl. ¶ 48; *id.* Ex. U. That is too little, too late. Mother cannot justify the return of these documents under the applicable test. *See United States ex rel. Parikh v. Premera Blue Cross*, 2006 WL 2927700, *1 (W.D. Wash. Oct. 11, 2006) (citing *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177–78 & n.11 (C.D. Cal. 2001)).

L. L. Bean's Motion for Discovery Sanctions – 10 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

Mother took *no* reasonable precautions to prevent inadvertent disclosure. Indeed, Mother did not take the time to number its responsive documents, let alone inventory them. Brann Decl. ¶ 16. Nor did Mother identify a single document in its possession as privileged at the time of production. Nor has Mother produced a privilege log to date. Further, Mother made no effort to rectify the disclosure at the time it was revealed, during Grabijas' deposition on February 13, 2007. Instead, Mother waited a month, until after L. L. Bean announced its intention to file the instant motion, before claiming inadvertent disclosure.

Because any lingering attorney–client privilege had been waived, L. L. Bean's questions regarding the contents of the communications between Grabijas and Jones were proper, and Mother's counsel's instructions not to answer on the ground of attorney–client privilege were improper.

For the reasons set forth above, L. L. Bean is entitled to answers to its questions regarding the Orvis–Mother relationship and the communications between Grabijas (for Mother) and attorney Jones. L. L. Bean requests that the Court enter an order to that effect, consistent with its ruling on the issue of unproduced electronically stored information.

As explained above, in order to make sure that Mother is not rewarded for its conduct, or that L. L. Bean is punished for seeking appropriate relief from the Court, it is essential that any further deposition be conducted at no additional expense to L. L. Bean. Thus, Mother should be ordered to produce Grabijas for his continued deposition at the offices of L. L. Bean's counsel in Maine, and ordered to pay for the deposition transcript costs. Likewise, in addition to the 54 minutes of deposition time remaining when Grabijas walked out of the deposition, L. L. Bean should receive some additional time to compensate for the disruption caused by the 120 largely improper objections.

L. L. Bean's Motion for Discovery Sanctions – 11 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

### III. L. L. BEAN IS ENTITLED TO ITS COSTS RELATING TO THIS MOTION, INCLUDING ATTORNEYS' FEES.

By operation of Fed. R. Civ. P. 37(a)(4), L. L. Bean is entitled to an award of its reasonable expenses in making the instant motion, including attorneys' fees. *See Ritchie v. Federal Express Corp.*, 2006 WL 2988219, *2 (W.D. Wash. Oct. 17, 2006). L. L. Bean attempted in good faith to meet and confer with Mother's counsel regarding the issues raised above, and received in response only a repetition of the same arguments previously advanced by Mother. *See* Brann Decl. ¶ 50; *id*. Ex. V. Mother can assert no substantial justification for failing to produce relevant electronically stored information, for walking out of the deposition early, for interposing irrelevant objections on over 100 occasions, or for instructing Grabijas not to answer questions on matters for which no applicable privilege existed or for which any arguable privilege had been waived.

L. L. Bean's Motion for Discovery Sanctions – 12 of 14

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566

# CONCLUSION

For the reasons set forth above, L. L. Bean requests that the Court grant its motion for sanctions and to compel.

Dated: March 15, 2007

        BRANN & ISAACSON

        By:    /s/ David Swetnam–Burland
                Peter J. Brann
                (admitted *pro hac vice*)
                pbrann@brannlaw.com
                David Swetnam–Burland
                (admitted *pro hac vice*)
                dsb@brannlaw.com

and

        By:    /s/ Bradley A. Maxa
                Bradley A. Maxa
                bmaxa@gth-law.com

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSEN & DAHEIM, LLP
Bradley A. Maxa
WSBA No. 15198

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2007, I electronically filed the foregoing L. L. Bean's Motion for Sanctions and to Compel using the CM/ECF system, which will send notification of such filing to all counsel of record in this action.

/s/ David Swetnam–Burland
David Swetnam–Burland

BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, Maine 04243
(207) 786–3566