1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

MOTHER, LLC.,

                        Plaintiff,

           v.

L.L. BEAN, Inc.,

                    Defendant.

**Case No.** C06-5540 JKA

ORDER DENYING
  DEFENDANT'S MOTION FOR
  SUMMARY JUDGMENT

     This matter comes before the court on defendant L.L. Bean's Motion for Summary Judgment (Doc.#33). The court has considered all materials submitted in support of and in response to said motion as well as the files and records herein.

## DISCUSSION

     Plaintiff seeks protection pursuant to 15 U.S.C. 1125(a), Section 43 of the Lanham Act. Specifically plaintiff seeks relief for an alleged "trade dress" infringement on a hunting vest/daypack. To recover plaintiff must establish that its trade dress is protectable, and that there is a *likelihood* that defendant's use of the trade dress will create confusion in the mind of the ordinary consumer. Courts have recognized the need to "exercise 'particular caution' when extending protection to product designs because such claims present an acute risk of stifling competition . . . " *Walker v. Zanger, Inc. V. Paragon Indus.*, 465 F.Supp.2d, 956,961 (N.D.Cal.2006).

     The law as it applies to this case is well summed up in TrafFix Devices, Inc., v. Marketing Displays, Inc., 532 U.S. 23, 121 S.Ct. 1255, wherein the court states as follows:

> "It is well established that trade dress can be protected under federal law. The design
> or packaging of a product may acquire a distinctiveness which serves to identify the

ORDER
Page - 1

product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.  In these respects protection for trade dress exists to promote competition.  As we explained just last Term, see *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), various Courts of Appeals have allowed claims of trade dress infringement relying on the general provision of the Lanham Act which provides a cause of action to one who is injured when a person uses "any word, term name, symbol, or device, or any combination thereof ... which is likely to cause confusion ... as to the origin, sponsorship, ir approval of his or her goods." 15 U.S.C. 1125(a)(1)(A).  Congress confirmed this statutory protection for trade dress by amending the Lanham Act to recognize the concept.  Title 15, U.S.C. 1125(a)(3) (1994 ed., Supp. V) provides: "In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."  This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional.  *Qualitex*, supra at 164-165, 115 S.Ct. 1300; *Two Pesos, Inc. V. Taco Cabana, Inc.*, 505 U.S. 763, 775, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).  And in Wal-Mart, supra, we were careful to caution against misuse or overextension of trade dress.  We noted that "product design almost invariably serves purposes other than source identification." Id., at 213, 120 S.Ct. 139.

Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products.  In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.  As the Court has explained, copying is not always discouraged or disfavored by the laws which preserve our competitive economy. *Bonito Boats, Inc. V. Thunder Craft Boats, Inc.*, 489 U.S. 141, 160, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989).  Allowing competitors  to copy willhave salutary effects in many instances.  "Reverse engineering of chemical and mechanical articles in the public domain often leads to significant advances in technology."

The undispsuted facts appear to be as follows: The parties met in December 2004 to discuss the possibility of Bean selling the Mother Daypack, an upland hunting pack designed and sold by Mother.  Bean began selling the Mother Daypack through its website and catalogue in July 2005.  The Bean catalogue containing a one-page display of the Mother Daypack,  was distributed to an estimated 1.2  million households. Bean then decided to produce its own Upland Vest Pack which they began selling in July 2006, terminating sales of the Mother product.

Plaintiff asserts that the manufacture, marketing and sales of the Bean Upland VestPack constitutes a trade dress infringement under the Lanham Act.

Defendant seeks summary judgment on all claims asserted by plaintiff.  Plaintiff's action was filed September 21, 2006 alleging that defendant designed, manufactured, and sold a hunting vest which infringed on plaintiff's trade dress.

Defendant correctly asserts that in order to succeed on a claim for trade dress infringement,

ORDER
Page - 2

plaintiff must prove three elements: (1)secondary meaning, (2) non-functionality, and (3) likelihood of confusion in order to prevail on the trade dress claims.

**1. Secondary Meaning.**  Secondary meaning is the mental association by a substantial segment of consumers and potential consumers between the alleged trade dress and a single source of the product. Secondary meaning encompasses the consumer's recognition of a product as distinctive.  This could be established by such direct evidence as consumer survey, or by such circumstantial evidence as (1) the length and exclusivity of use of the trade dress; (2) the nature and extent of advertising and promotion of the trade dress; (3) the existence of substantial advertising; (4) the product's established place in the market; (5) proof of intentional copying; and (6) promotion that specifically directs a consumer's attention to those features claimed as trade dress. *Walker & Zanger, Inc. V. Paragon Industries, Inc*, 465 F.Supp2d 956 (N.D. Cal. 2006).

*a. Length of Exclusive Use*.  It is undisputed that Mother's vest in question was less than two years old at the time this action was filed.

*b. Advertising and Promotion in the Market Place.*  Defendant suggests that plaintiff's expenditures approximating $80,000 for 2005 and 2006 were negligible.  Defendant further asserts that plaintiff's marketing was directed toward emphasizing the functionality of the vest as opposed to distinguishing the vest by way of its appearance.

*c. Intentional/Actual Copying.*  Plaintiff suggests a strong inference of intentional copying based on defendant's sale of plaintiff's vest until such time as defendant introduced its own alleged infringing vest; and  defendant's manufacture of the alleged infringing vest by the same company that manufactured plaintiff's vest. Defendant asserts no knowledge that the manufacture of plaintiff's vest by the same manufacturer of their vest,  Pungchook Corporation (PK) of Vietnam, until this lawsuit. Defendant's designer, Kurt Heisler, denies using plaintiff's vest as a template for his design of the alleged infringing vest.  Lastly, defendant suggests that its  size, familiarity, and gross annual sales on a worldwide basis are inconsistent with the need to trade on the product of a small company such as plaintiff.

*d. Plaintiff's Place in the Market*.  Defendant again relies on the youth of plaintiff company and its corresponding gross sales figures, in support of the contention that plaintiff had not established itself in the market place.

**2. Degree of Functionality.**  Mother's claims of trade dress elements are the (a) overall streamlined shape; (b) shape of the vest's blaze panel; (c) placement of the Mother logo on the panel pocket; (d) positioning of the mesh rear pocket with zipper and black strap immediately above it; (e) vest's black side pockets; (f) distinctive black fabric rectangles on Khaki colored side pockets; (g) finishing details of its shoulder straps; (h) material and design of the bungee cord on the front panel; and (i) shape of the back panel. Defendant submits that plaintiff cannot establish the elements of its claimed trade dress for the reasons immediately hereafter set forth.

      *a. Elements of Mother's trade dress are generic.*  Defendant asserts that all of plaintiff's claims are nonexistent (black strap), required by regulation (black rectangles), functionally required (mesh pocket and log placement) and otherwise so basic that they do not rise to the level of source identification.

Plaintiff points to defendant designer Heilser's remark that the two packs do not look "demonstrably different." Interestingly, each side uses the other's descriptive advertising language to support their respective positions. Bean calls the court's attention to Mother's use of the word "functional" and Mother invites the court's attention to Bean's use of the word "innovative."

      *b. Mother cannot consistently identify the elements of its trade dress.*  Defendant asserts inconsistent allegations from plaintiff owner, Grabijas, and plaintiff designer, Thompson, as to plaintiffs trade dress claims, concluding that there is no evidence of a distinctive set of features as an indicator of source.

      *c. Mother's vest is "Pure Function."*  Defendant seeks protection on the basis that the vest design features are essential to the use or purpose of the article and therefore not protected from copying by trademark law relying on *TrafFix Devices, Inc. v. Mktg Displays, Inc.*, 532 U.S. 23, 32 (2001), wherein the court stated: "Discussing trademarks, we have said " '[i]n general terms, a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.' " *Qualitex*, 514 U.S., at 165, 115 S.Ct. 1300 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).   Expanding upon the meaning of this phrase, we have observed that a functional feature is one the "exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage." *Qualitex*.  Finally, defendant cites to plaintiff's stress of "function" in its advertising and marketing materials, and argues the functionality of each of the claimed trade dress elements set forth above.

Plaiintiff asserts that "a product feature is functional if it is essential to the product's use or affects the quality or cost of the product." *Fuddruckers, Inc. v. Doc's B.R. Others*, 826 F.2d at 843.   Plaintiff further cites a four-part test to assist in determining functionality: (a) whether the design yields a utilitarian advantage; (b) whether alternative designs are available; (c) whether advertising touts utilitarian advantage; and (d) whether the particular design results from a comparatively inexpensive or simple method of manufacture. *Disc Golf Assn Inc. V. Champion Discs, Inc.* 158 F.3d 1002, 1006 (9th Cir. 1998).  While Mother acknowledges the functional characteristics of the Mother product, they deny a "functional" characterization of the trade dress design elements it claims Bean copied.  Put differently, plaintiff asserts that the design features subject of this litigation are not essential to the function or purpose of the product.

**3. Confusion.**  Citing factors from *AMF, Inc. V. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979) defendant asserts the test to be "likelihood" of confusion not "possibility" of confusion.  The *Sleekcraft* factors are: (a) strength of plaintiff's mark; (b)relatedness of the goods; (c) similarity of the marks; (d) actual confusion; (e) marketing channels used; (f) likely degree of purchaser care; (g) defendant's intent in selecting the mark; and (h) likelihood of expansion of product lines.  Defendant focuses as most probative in this case on (d) actual confusion, and (g) intent to copy.

Defendant alleges there is no evidence of intent to copy and no survey evidence to support confusion.  Defendant goes on to argue that four customer comments solicited by Mother produced inquiries as to whether the LLBean vest was produced by Mother as a private label design for defendant, and that one "second hand" story of a customer purchasing defendant's product believing it to be plaintiff's product are insufficient to support a claim based on "confusion."  Plaintiff counters with evidence of copying through the use of the same manufacturer, use of the Mother vest to determine sizing and coloring, and similar advertising and marketing techniques.

Defendant further argues that the parties used different marketing channels asserting  that defendant has never sold the Mother Vest and the Bean vest simultaneously.  Defendant submits that placement of the should be  readily visible in order to make certain the customer does in fact understand the source,  and that the similarity of placement aids in distinguishing the product and its source.

Plaintiff cites *Nutri/System, inc. v. Con-Stan Industries, Inc.*, 599 F.2d 601 (9th Cir. 1987) as authority for the proposition that "likelihood of confusion" will be found "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of

ORDER
Page - 5

1
2
3
4
5

similarities between the two sources' marks or marketing techniques."  Plaintiff highlights the similarities outlined as trade dress issues.  Additionally plaintiff claims evidence of similar marketing channels through internet web sites, trade shows, and Bean's use of essentially identical Mother marketing language.  Finally plaintiff argues that the obvious intentional copying leads to a presumption of likelihood of confusion. *M.Kramer Mfg., Co.* 783 F.2d at 448 n.24.

6
7
8

**4.  Mother's State Law Claim Depends Wholly on its Trade Dress Claims.**  Defendant seeks dismissal of the state law claim arguing that it is (1) derivative of the federal claim, and if not (2) should be adjudicated in State court without this court's exercise of supplemental jurisdiction.

9

## CONCLUSION

10
11
12

In order to prevail on the motion for summary judgment, defendant must show absence of a genuine issue as to any material fact.  It is undisputed that plaintiffs must present sufficient evidence to defeat the motion with regard to (1) secondary meaning; (2) non-functionality; and (3) likelihood of confusion.

13
14
15
16
17
18

It is not unusual for the acknowledged facts in the case at a bar to distinguish themselves in some, if not many, respects, from the facts in the cases cited.  This is not a case where (1) there had been no relationship between the parties before the alleged infringement; (2) the alleged infringer had not sold the very product at issue prior to manufacturing the product in dispute; (3) there was a lapse of time between the utilization of plaintiff's product by defendant and defendant's production of the challenged product. While these non-exclusive factors are not dispositive they raise  sufficient inferences to overcome summary judgment with regard to secondary meaning.

19
20
21
22

Clearly the product in question has a specific functional purpose.  Arguably, some of the trade dress issues raised by plaintiff are functional, some are quasi-functional, and some design components.  The court cannot say as a matter of law that plaintiff's trade dress allegations must be disposed of on the basis of functionality.

23
24
25
26

With regard to the element of confusion, the fact that defendant sold plaintiff's product under plaintiff's name and in rapid succession replaced it with it's own remarkably similar product creates a threshold for confusion.    If the fact-finder were to find "intentional copying" that alone could create a question of fact with regard to confusion based on the advertising and marketing techniques.

27
28

Plaintiff makes no response to defendant's motion alleging the State Claim under R.C.W. 1986,

Unfair Business Practices – Consumer Protection Act,  to be derivative. As nearly as this court can discern,

ORDER
Page - 6

1  plaintiff claims that by violating the Lanham Act defendant engaged in an unfair business practice.

2  Assuming that to be the case, plaintiff's prevailing on the state law claim is dependent on prevailing on the

3  federal claim under the Lanham Act.   Accordingly, they will be treated the same.

4

5  **<u>Defendant's motion for summary judgment of dismissal on plaintiff's Lanham Act</u>**
   **<u>claim and state law claim is denied.</u>**

6

7                              Dated this 24th day August 2007.

8

9                              /s/ J. Kelley Arnold
                               _____

10                             J. Kelley Arnold, United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 7